**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ROBERT FRIEDLAND, | Civil No. 05-0495 (MLC) |
| Plaintiff, | |
| v. | **O P I N I O N** |
| CHARLES DANIEL, et al., | |
| Defendants. | |

**APPEARANCES**:

> ROBERT FRIEDLAND, #3159637, Pro Se
> Monmouth County Correctional Institution
> 1 Waterworks Road, Freehold, New Jersey  07728

**COOPER**, District Judge

Plaintiff Robert Friedland, a prisoner incarcerated at Monmouth County Correctional Institution ("MCCI"), seeks to file an Amended Complaint pursuant to 28 U.S.C. § 1915.  The Court will (1) grant Plaintiff's application to proceed in forma pauperis; (2) grant Plaintiff's motion to file an Amended Complaint; (3) direct the Clerk to file the Amended Complaint without pre-payment of the filing fee; (4) assess a $250.00 filing fee; (5) direct the agency having custody of Plaintiff to deduct an initial partial filing fee from Plaintiff's prison account, when funds exist, and forward it to the Clerk of the Court; and (6) direct the agency having custody of Plaintiff to forward payments from Plaintiff's prison account to the Clerk each subsequent month that the amount in the account exceeds $10.00, until the total of $250.00 is paid

in full.[1]  See 28 U.S.C. § 1915(a), (b).  The Court has reviewed the Amended Complaint, as required by 28 U.S.C. §§ 1915(e)(2) and 1915A, and will dismiss the Amended Complaint in part.[2]

## I.   BACKGROUND

Plaintiff asserts violation of his constitutional rights by Police Officers Charles Daniel and Steven Budelman, MCCI Warden Fraser, members of the Monmouth County Board of Chosen Freeholders, former MCCI Warden Bonaforte, unknown persons in the MCCI Medical Department, MCCI corrections officers Kudrick, Matlock, Shanahan, and Fatigante, MCCI employee Gwenn Bennett, Monmouth County Sheriff Joseph W. Oxley, and other persons whose names must be determined through discovery.  Plaintiff asserts numerous claims relating to his arrest and incarceration at MCCI.

---

[1] Because the filing fee was $250.00 when Plaintiff submitted the original Complaint, this Court will assess that fee.  The Clerk received the original Complaint on January 26, 2005.  Before this Court screened the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, Plaintiff moved to file an Amended Complaint.  Although a motion is not necessary, this Court will grant the motion and direct the Clerk to file the Amended Complaint.  See Fed. R. Civ. P. 15(a).

[2] Once an amended complaint is filed, the original complaint no longer performs any function in the case and cannot be utilized to cure defects in the amended complaint, unless the relevant portion is specifically incorporated in the amended complaint.  6 Wright, Miller & Kane, Fed. Practice & Procedure: Civil 2d § 1476 (1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  In this case, the Amended Complaint does not incorporate the original Complaint.

## II. STANDARD OF REVIEW

The Court is required, prior to docketing or as soon as practicable after docketing, to review a complaint in a civil action in which a plaintiff is proceeding in forma pauperis or a prisoner seeks redress against a governmental employee or entity. See 28 U.S.C. §§ 1915(e)(2)(B), 1915A.  The Court must sua sponte dismiss any claim if it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  Id.

A pro se complaint is held to less stringent standards than formal pleadings drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  A court must "accept all allegations as true and attribute all reasonable inferences in favor of [plaintiff.]" Alston v. Parker, 363 F.3d 229, 233 (3d Cir. 2004).  A claim is frivolous if it "lacks even an arguable basis in law" or its factual allegations describe "fantastic or delusional scenarios." Neitzke v. Williams, 490 U.S. 319, 328 (1989); see also Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990).  "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); see Alston v. Parker, 363 F.3d 229, 233 n.6 (3d Cir.

2004) ("we will affirm the District Court's dismissal only if it appears that Alston could prove no set of facts that would entitle him to relief").

### III.  DISCUSSION

42 U.S.C. § 1983 authorizes a person such as Plaintiff to seek redress for a violation of federal civil rights by a person who was acting under color of state law.  It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

A plaintiff "must indicate:  (1) of what constitutional or federal right he was deprived, and (2) how he was deprived of that right under color of state law."  Gibson v. Superintendent of N.J. Dep't of Law & Public Safety, 411 F.3d 427, 433 (3d Cir. 2005); see West v. Atkins, 487 U.S. 42, 48 (1988); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970).

A.  Fourth Amendment

Plaintiff asserts that on August 12, 2004, Police Officers Daniels and Budelman illegally searched "plaintiff's premise" in Elizabeth by falsely stating that they had a search warrant.  (Compl. attachment.)  In addition, Plaintiff asserts that Daniels and Budelman falsely testified against him.  However, the claim

4

regarding false testimony fails and will be dismissed because a witness enjoys absolute immunity from damages under § 1983 for false testimony.  See Briscoe v. LaHue, 460 U.S. 325, 330-46 (1983) (officer testifying in criminal trial enjoys absolute witness immunity for false testimony); Kulwicki v. Dawson, 969 F.2d 1454, 1467 (3d Cir. 1992) (witness testifying in judicial proceeding is absolutely immune for false testimony); Williams v. Hepting, 844 F.2d 138, 143 (3d Cir. 1988) (witness is entitled to absolute immunity from civil liability under § 1983 for perjured testimony at preliminary hearing and suppression hearings).

The Court construes these allegations regarding the search as a Fourth Amendment claim.  The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend IV.  Absent exigent circumstances, the "firm line at the entrance to the house . . . may not reasonably be crossed without a warrant," even if the police have probable cause that Plaintiff committed a crime.  Payton v. New York, 445 U.S. 573, 590 (1980); see Kirk v. Louisiana, 536 U.S. 635, 637 (2002) ("officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry

5

into a home"). The Court will allow the Fourth Amendment claim to proceed against Daniels and Budelman because they allegedly entered and searched Plaintiff's dwelling without a warrant and the facts alleged do not establish exigent circumstances.

B.  Denial of Medical Care

Plaintiff asserts that, upon his entry to MCCI on September 28, 2004, he informed officials in the Medical Department that recent testing showed that he had an elevated PSA level. He alleges that medical officials refused to perform diagnostic testing for the next 16 months. Plaintiff asserts that on November 22, 2005, his PSA level tested at 27.5, with a normal level being four. He alleges that on December 22, 2005, medical personnel determined that Plaintiff had cancer.

Plaintiff does not indicate whether he is incarcerated at MCCI as a pretrial detainee or a sentenced prisoner. The Due Process Clause of the Fourteenth Amendment protects pretrial detainees from punishment that may not constitutionally be inflicted upon detainees. See Bell v. Wolfish, 441 U.S. 520, 535 n.16, 538-39 (1979). The Eighth Amendment applies only after the state "has secured a formal adjudication of guilt" because prior to that time it has not acquired the "power to punish with which the Eighth Amendment is concerned." Ingraham v. Wright, 430 U.S. 651, 671-72 n.40 (1977). "In assessing whether the conditions are reasonably related to the assigned purposes, [a court] must

further inquire as to whether these conditions cause [inmates] to endure [such] genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them."  Hubbard v. Taylor, 399 F.3d 150, 159 (3d Cir. 2005) (quoting Union County Jail Inmates v. DiBuono, 713 F.2d 984, 992 (3d Cir. 1983)).

To establish a violation of the Eighth Amendment right to adequate medical care, a prisoner "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."  Natale v. Camden County Corr. Fac., 318 F.3d 575, 582 (3d Cir. 2003); see Estelle v. Gamble, 429 U.S. 97 (1976).  A medical need is serious if it is diagnosed by a physician as requiring treatment or "if unnecessary and wanton infliction of pain . . . results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment."  Atkinson v. Taylor, 316 F.3d 257, 266 (3d Cir. 2003). An official may be found deliberately indifferent where he "knows of and disregards an excessive risk to inmate health or safety." Natale, 318 F.3d at 582 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).  "Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate to undue suffering or the threat of tangible residual injury, deliberate indifference is manifest."  Monmouth County Corr. Inst.

7

Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). Also, deliberately delaying necessary medical care when the delay causes an increased risk of harm constitutes deliberate indifference that is actionable. Id.; Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993); White v. Napoleon, 897 F.2d 103 (3d Cir. 1990).

Plaintiff asserts in the Amended Complaint that he advised medical personnel in September 2004, when he arrived at the jail, that a test taken during the prior month showed an abnormally high PSA level. Plaintiff alleges that officials failed to perform a PSA test or to obtain a copy of the prior test until 14 months later, when "plaintiff 'fell out' and was in severe pain." (Compl. attachment.) In addition, Plaintiff asserts that "Former Warden Bonaforte was directly responsible for the denial of proper medical treatment from Sept. 28, 2004 until July 2005, thus causing cancer in plaintiff. He allowed the medical firm to deny tests and thus treatment to plaintiff, now resulting in cancer, mental anguish." (Compl. attachment.)

This Court notes that the Eighth Amendment only acts as a floor for due process inquiries into medical and non-medical conditions of pretrial detainees. While "the due process rights of a [pretrial detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner," Hubbard, 399 F.3d at 166 (citation omitted), the proper standard for examining such claims is the standard set forth in Bell v.

8

Wolfish, 441 U.S. 520; i.e., whether the conditions of confinement or inadequate medical treatment amounted to punishment prior to an adjudication of guilt.  Hubbard, 399 F.3d at 158.

In light of the liberal notice pleading standard applied to pro se litigants, see Alston, 363 F.3d at 233 n.6, this Court finds that sua sponte dismissal of Plaintiff's denial of adequate medical care claim is not warranted.

C.  Failure to Protect

Plaintiff asserts that Corrections Officer Kudrick falsely filed disciplinary charges against Plaintiff and a leader of "the Bloods" prison gang, and that the filing of the false charges caused Plaintiff to receive threats from gang members.  Plaintiff alleges that Kudrick thereafter allowed him to be transferred to the wing which housed this gang leader, and failed to report a karate kick against Plaintiff by another inmate.  Plaintiff asserts that Defendants Oxley, Matlock, Shanahan, Fatigante, Gwenn Bennett, and Warden Fraser were aware of the situation, but failed to take appropriate action, and that he was eventually beaten by members of the Bloods.

The Due Process Clause of the Fourteenth Amendment prohibits pretrial detainees from being "punished prior to an adjudication of guilt in accordance with due process of law."  Bell, 441 U.S. at 535.  Moreover, jail officials have a duty under the Eighth Amendment to take reasonable measures to guarantee the safety of

9

the inmates.  Farmer v. Brennan, 511 U.S. 825, 832 (1994).  To prevail on an Eighth Amendment failure to protect claim, an inmate must show that he is "incarcerated under conditions posing a substantial risk of serious harm" and that the defendant was deliberately indifferent to the risk.  Id. at 833, 837.  To establish deliberate indifference by an individual, a plaintiff must show that the individual was subjectively aware of the risk of harm to the plaintiff's health or safety, and disregarded it. See Farmer, 511 U.S. at 837; Natale, 318 F.3d at 582.

Keeping in mind the notice pleading standard, and that pro se complaints should be construed liberally, this Court will allow Plaintiff's failure to protect claim to proceed.

D.  Deprivation of Property

Plaintiff asserts that Defendants knowingly allowed inmates to steal Plaintiff's personal property.  To analyze a procedural due process claim, the first step is to decide whether the person was deprived of a liberty or property interest protected by due process.  See Fuentes v. Shevin, 407 U.S. 67 (1972).  Only if the answer is yes, is the second step, determining what process is due, necessary.  See Morrissey v. Brewer, 408 U.S. 471 (1972). Plaintiff's deprivation of property claim fails as a matter of law because the New Jersey Tort Claims Act ("NJTCA"), N.J.S.A. § 59:1-1 et seq., provides all the process that is due.  See Holman v. Hilton, 712 F.2d 854, 857 (3d Cir. 1983); Asquith v.

Volunteers of A., 1 F.Supp.2d 405, 419 (D.N.J. 1998), aff'd 186 F.3d 407 (3d Cir. 1999).  Because the NJTCA is an available remedy providing all the process which is due, Plaintiff's due process claim regarding the loss of property fails, and the Court will dismiss this claim with prejudice.

E.  Disciplinary Sanction

Plaintiff also complains that he was placed in disciplinary confinement for 22 days without due process of law.  Although a convicted inmate does not have a protected liberty interest in remaining in the general population and avoiding segregated confinement, see Sandin v. Conner, 515 U.S. 472, 483-484 (1995); Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997), the due process clause prohibits intentional punishment of a pretrial detainee without due process of law.  See Bell, 441 U.S. at 535-39.  In light of the notice pleading requirement, this Court will allow this claim to proceed past the sua sponte dismissal stage.

## IV.  CONCLUSION

The Court grants Plaintiff's application to file the Amended Complaint in forma pauperis, and dismisses the Amended Complaint in part.

      s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge